USDC-SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC#:
DATE FILED: 09/27/2017

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

EDGAR SOTO, JR., *et al.*,

        Plaintiffs,

v.

THE CITY OF NEW YORK, *et al.*,

        Defendants.

No. 12-CV-6911 (RA)

OPINION & ORDER

---

RONNIE ABRAMS, United States District Judge:

    This case arises out of the tragic shooting of a mentally ill man and his mother by members of the New York City Police Department. Plaintiffs Edgar Soto, Jr., Flora Soto, and Edgar Soto, Sr. asserted excessive force and due process claims against the City of New York and Police Officers Brian Santiago, Angel Torres, and Augustin Melendez pursuant to 42 U.S.C. § 1983, as well as state law claims for assault, battery, and loss of consortium. After a two-week jury trial, Plaintiffs moved for partial judgment as a matter of law pursuant to Federal Rule of Civil Procedure 50, arguing that the shots fired by Officer Santiago during the incident in question constituted "textbook excessive force." The Court denied the motion with leave to renew. The case was submitted to the jury, which found for Defendants on all claims. Plaintiffs now renew their motion for partial judgment as a matter of law. For the reasons that follow, the motion is denied.

## BACKGROUND

    On May 7, 2012, Officers Santiago and Torres responded to a call from dispatch regarding a family dispute with a knife at 408 East 65th Street in Manhattan. Trial Tr. at 968:16–18, 981:24–982:1, 1033:3–7, 1062:9–18. When they arrived, they encountered Diana Soto, Edgar Soto, Jr.'s sister, who told them that Edgar was upstairs with their mother, Flora Soto, and that Edgar had a

knife. *Id.* at 1064:10–16, 1266:17–21; *see also id.* at 1033:20–25. Officers Santiago and Torres could hear yelling, which grew louder as they moved upstairs. *Id.* at 1034:1–9, 1064:17–20, 1266:22–25. On the stairway between the fifth and sixth floors of the building, they encountered Officer Julian Cocianga, who had arrived before them. *Id.* at 983:2–3, 1034:5–13, 1066:1–5, 1256:9–11, 1267:1–4; *see also id.* at 438:2–18. Officer Cocianga had his gun drawn and pointed towards Edgar, who was on the sixth floor. *Id.* at 969:17–18, 983:4–5, 1034:5–13, 1256:12–15, 1267:1–4; *see also id.* at 429:3–4, 436:25–437:5, 449:21–23. Officers Santiago and Torres heard Officer Cocianga repeatedly instruct Edgar to drop the knife that he was reportedly holding. *Id.* at 983:19–21, 1034:5–13, 1034:20–1035:1, 1267:11–17; *see also id.* at 420:13–18, 449:12–16, 450:1–4. Officer Cocianga and Edgar were yelling loudly at one another, and Edgar refused to drop the knife despite Officer Cocianga's commands. *Id.* at 983:22–23, 1034:5–13, 1034:20–1035:1, 1267:11–17; *see also id.* at 420:17–18, 450:1–4, 1305:21–1306:4.

Officers Santiago and Torres moved past Officer Cocianga and up to the sixth floor. *Id.* at 983:15–18, 1035:9–10, 1035:19–1036:3, 1267:18–24. Once they reached the sixth floor, they saw Edgar and Flora directly in front of them. *Id.* at 985:2–16, 1036:8–19, 1037:20–1038:11, 1070:9–11, 1268:9–15. Edgar, who was in his early twenties and weighed over 200 pounds, *id.* at 682:20–23, 688:1–3, 860:7–11, was holding a steak knife, *id.* at 961:13–15, 1035:4–8, 1036:20–23, 1075:18–21, 1076:21–1077:2, 1078:9–12, 1268:16–24; *see also id.* at 376:6–9, 1300:1–2. Both Officers Santiago and Torres testified that the knife was pointed in their direction. *Id.* at 1035:4–8, 1036:20–23, 1075:18–21, 1076:21–1077:2, 1078:9–12, 1268:16–24. Flora was positioned between Edgar and the officers. *Id.* at 1036:15–19, 1038:9–11, 1070:9–11, 1268:9–15. The officers continued to instruct Edgar to drop the knife, and Edgar continued to refuse. *Id.* at 450:19–451:1, 1036:8–14, 1269:7–16. Officer Santiago testified that Flora asked the officers to let her

2

speak with Edgar, which he encouraged her to do. *Id.* at 1036:24–1037:17.[1] Officer Santiago also testified that Edgar threatened to "stab [the officers] in the fucking eye" if they moved any closer to him. *Id.* at 1037:11–13; *see also id.* at 1039:6–8, 1057:7–8.

Shortly after Officers Santiago and Torres reached the sixth floor, Sergeant Timothy McLaughlin arrived on the scene. *Id.* at 1039:11–17, 1066:13–19, 1269:17–1270:2. Sergeant McLaughlin testified that he observed Edgar with a knife in his hand cursing and yelling at the other officers. *Id.* at 1471:24–1472:12. Sergeant McLaughlin took Officer Santiago's position on the sixth floor, and Officer Santiago moved down onto the stairway between the fifth and sixth floors. *Id.* at 1039:11–17, 1066:13–19, 1444:7–9, 1471:24–1472:12. Sergeant McLaughlin and Officer Torres testified that they stood shoulder-to-shoulder in the hallway at the top of the stairs. *Id.* at 1068:6–14, 1069:9–24, 1078:25–1079:1, 1254:21–25, 1269:17–1270:2, 1444:10–16, 1445:7–1446:1; *see also id.* at 560:2–24. They faced Edgar and Flora, who were standing outside of their apartment approximately thirteen feet away. *Id.* at 178:13–17, 1067:4–15, 1455:4–6, 1473:12–16; *see also id.* at 1378:3–14. Flora was still positioned in front of Edgar. *Id.* at 1067:4–15, 1473:12–22. Sergeant McLaughlin and Officer Torres repeatedly instructed Edgar to drop the knife, but he continued to refuse. *Id.* at 1040:14–18, 1270:3–9, 1460:7–13, 1474:13–22.

Officers Santiago and Cocianga testified that they remained on the stairway between the fifth and sixth floors during this time. *Id.* at 427:19–25, 987:15–23, 988:20–993:15, 1039:23–1040:21, 1046:25–1047:25. Officer Raul Mera, who arrived on the scene with Sergeant McLaughlin, and Officer Francis Lavelle, who arrived after Sergeant McLaughlin and Officer

---

[1] Prior to the incident on May 7, 2012, Edgar Soto, Jr. had been diagnosed with schizophrenia. Trial Tr. at 681:20–24. Flora testified that she informed at least some of the officers of Edgar's condition. *Id.* at 1303:19–25. Both Officers Santiago and Torres testified that they were not aware that Edgar was mentally ill at the time of the shooting. *Id.* at 987:3–11, 1071:24–1072:20, 1257:6–7.

3

Mera, were positioned there as well. *Id.* at 558:7–9, 563:5–18, 566:7–10, 1437:2–9, 1487:22–23, 1490:6–14. According to their testimony, the officers on the stairway had a partial view of what was transpiring on the sixth floor. Officer Santiago testified that he could see Edgar, but not Flora, Sergeant McLaughlin, or Officer Torres. *Id.* at 962:2–11, 1040:14–21. According to the testimony of Officers Cocianga, Lavelle, and Mera, their view of the sixth floor was approximately the same as Officer Santiago's. *See id.* at 422:15–24, 428:1–7, 566:4–24, 591:21–24, 1491:5–8.

What happened next was disputed at trial, but there was general agreement that it happened quickly. *See, e.g., id.* at 427:11–17, 571:5–12, 1006:7–8, 1388:4–8, 1495:20–22. Sergeant McLaughlin testified that he asked Flora to move to the side so that she was no longer between the officers and Edgar. *Id.* at 1474:13–1475:7. She complied, and he fired a taser in an attempt to subdue Edgar without using deadly force. *Id.* at 1077:8–14, 1270:16–19, 1274:23–1275:10, 1474:23–1475:7; *see also id.* at 450:19–451:3. However, the taser was ineffective. *Id.* at 1475:15–19. According to the testimony of the various officers, after the taser was deployed, Edgar moved in the direction of Flora, Sergeant McLaughlin, and Officer Torres. *Id.* at 452:5–7, 594:5–14, 997:12–24, 1006:1–3, 1040:22–25, 1078:19–21, 1263:18–1264:5, 1270:20–24, 1475:8–1476:2, 1495:15–25. Some of the officers characterized Edgar's movement as a "charge." *See, e.g., id.* at 997:12–24, 1078:19–21. Both Sergeant McLaughlin and Officer Torres testified that they perceived Edgar to be an immediate threat. *See id.* at 1271:3–5, 1475:20–1476:2.

Officers Torres and Santiago fired their service weapons. According to Officer Torres, he fired once Edgar began advancing in his direction. *Id.* at 1271:6–7. Officer Santiago testified that he fired after Officer Torres. *Id.* at 1004:3–5. According to Officer Santiago, Edgar left his field of vision when he moved towards Flora, Sergeant McLaughlin, and Officer Torres, but then moved back into view immediately after Officer Torres fired. *Id.* at 1005:9–20, 1006:9–21; *see also id.*

4

at 571:23–572:4, 1271:8–10. Edgar was still holding the knife, and Officer Santiago testified that he had no visible injuries and appeared to be preparing for another charge. *Id.* at 1041:24–1044:13. Officer Santiago fired. *Id.* at 1006:22–25, 1044:4–15. In total, Officer Torres fired two rounds, and Officer Santiago fired three. *Id.* at 466:7–467:1. The testimony at trial indicated that all of the shots were fired within a few seconds of one another. *Id.* at 571:1–12, 622:8–13, 1006:7–21, 1453:3–1454:1. Edgar fell to the floor,[2] and Sergeant McLaughlin ordered the officers to stop shooting. *Id.* at 452:8–9, 570:18–20, 1044:14–1045:7, 1271:11–20, 1477:4–13, 1497:4–8. Officers Santiago and Torres testified that they had already stopped shooting by the time Sergeant McLaughlin issued this command. *Id.* at 1045:1–7, 1271:16–20.[3]

Plaintiffs presented evidence at trial that was intended to contradict the officers' account of the shooting. First, Plaintiffs' expert, Hal Sherman, opined that Officers Santiago and Torres were not where they claimed to be when they fired. In Sherman's opinion, it was more plausible that one officer (presumably Officer Santiago) fired while standing on a handrail between the fifth and sixth floors and the other officer (presumably Officer Torres) fired from the stairway between the sixth floor and the roof of the building. *See id.* at 1180:2–12, 1183:21–1184:2. Second, Plaintiffs presented evidence that one of the bullets that struck Edgar traveled roughly laterally across his flank before lodging in his spine. *See id.* at 795:2–15. Plaintiffs argued that this bullet was fired by Officer Santiago while Edgar was already on the floor. *Id.* at 1611:14–21.

Defendants' expert, George Krivosta, opined that the physical evidence was consistent with the officers' version of events. *See id.* at 510:17–23, 521:12–15, 533:20–22; *see also id.* at 189:3–

---

[2] Edgar was shot three times and Flora was struck with bullet fragments. Both survived.

[3] At trial, Plaintiffs alleged that Officers Santiago, Torres, and Melendez beat and kicked Edgar after he was shot. Those allegations are not relevant to the instant motion.

7, 328:12–17, 383:9–384:6. Sherman conceded on cross-examination that he could not rule out that Krivosta's conclusion was correct. *Id.* at 1197:3–9.

**STANDARD OF REVIEW**

Where a jury has returned a verdict for the non-movant, a court may grant judgment as a matter of law "only if the court, viewing the evidence in the light most favorable to the non-movant, concludes that a reasonable juror would have been *compelled* to accept the view of the moving party." *MacDermid Printing Sols. LLC v. Cortron Corp.*, 833 F.3d 172, 180 (2d Cir. 2016) (quotation marks omitted); *see also* Fed. R. Civ. P. 50(a) (providing that a court may grant judgment as a matter of law "[i]f a party has been fully heard on an issue during a jury trial and the court finds that a reasonable jury would not have a legally sufficient evidentiary basis to find for the party on that issue"). A court should set aside a jury's verdict only "where there is such a complete absence of evidence supporting the verdict that the jury's findings could only have been the result of sheer surmise and conjecture, or there is such an overwhelming amount of evidence in favor of the movant that reasonable and fair minded persons could not arrive at a verdict against him." *Vangas v. Montefiore Med. Ctr.*, 823 F.3d 174, 180 (2d Cir. 2016) (quotation marks and brackets omitted). "The court cannot assess the weight of conflicting evidence, pass on the credibility of the witnesses, or substitute its judgment for that of the jury, and must disregard all evidence favorable to the moving party that the jury is not required to believe." *ING Glob. v. United Parcel Serv. Oasis Supply Corp.*, 757 F.3d 92, 97 (2d Cir. 2014) (quotation marks omitted).

**DISCUSSION**

The jury in this case found for Defendants on all claims. Plaintiffs now ask the Court to set aside the jury's verdict and rule as a matter of law that the shots fired by Officer Santiago

6

constituted excessive force. Because the Court finds that the jury's verdict was supported by the evidence at trial, it declines to do so. Accordingly, Plaintiffs' motion is denied.[4]

Excessive force claims are "analyzed under the Fourth Amendment's 'objective reasonableness' standard." *Graham v. Connor*, 490 U.S. 386, 388 (1989). "Determining whether the force used . . . is 'reasonable' under the Fourth Amendment requires a careful balancing of 'the nature and quality of the intrusion on the individual's Fourth Amendment interests' against the countervailing governmental interests at stake." *Id.* at 396 (quoting *Tennessee v. Garner*, 471 U.S. 1, 8 (1985)). This "involves the consideration of factors such as 'the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight.'" *Terranova v. New York*, 676 F.3d 305, 308 (2d Cir. 2012) (quoting *Graham*, 490 U.S. at 396). "[T]he question is whether the officers' actions are 'objectively reasonable' in light of the facts and circumstances confronting them, without regard to their underlying intent or motivation." *Graham*, 490 U.S. at 397. "The 'reasonableness' of a particular use of force must be judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight." *Id.* at 396. Furthermore, the analysis "must embody allowance for the fact that police officers are often forced to make split-second judgments—in circumstances that are tense, uncertain, and rapidly evolving—about the amount of force that is necessary in a particular situation." *Id.* at 396–97.

An officer is entitled to use deadly force if the decision to do so is reasonable. *See Scott v. Harris*, 550 U.S. 372, 382 (2007). However, "[i]t is not objectively reasonable for an officer to use deadly force to apprehend a suspect unless the officer has probable cause to believe that the

---

[4] Defendants argue that Officer Santiago would be entitled to qualified immunity even if the shots that he fired constituted excessive force. *See* Defs.' Opp. at 15–17. As the Court finds that the jury's verdict as to excessive force was supported by the evidence at trial, it does not reach this issue.

7

suspect poses a significant threat of death or serious physical injury to the officer or others." *O'Bert ex rel. Estate of O'Bert v. Vargo*, 331 F.3d 29, 36 (2d Cir. 2003).

The jury was justified in concluding that the shots fired by Officers Santiago and Torres were reasonable. Viewing the evidence in the light most favorable to Defendants, the following narrative emerges. Officers Santiago and Torres arrive at an apartment building in response to a radio call regarding a family dispute with a knife. They encounter Officer Cocianga, whose service weapon is drawn. Officer Cocianga is shouting at Edgar Soto, Jr., commanding him to drop the steak knife that he is holding. Officers Santiago and Torres proceed to the sixth floor, where they are standing about thirteen feet from Edgar, who is pointing the knife in their direction, and Edgar's mother, Flora Soto. Edgar threatens to stab the officers if they get any closer.

Sergeant McLaughlin arrives and takes Officer Santiago's position on the sixth floor. Officer Santiago moves down to the stairway between the fifth and sixth floors, where he can see Edgar, but not Flora, Sergeant McLaughlin, or Officer Torres. Edgar is yelling and cursing at the officers. The officers continue to plead with him to drop the knife, but he refuses to do so. The mood is tense and the space is confined. Sergeant McLaughlin, in an attempt to subdue Edgar without using deadly force, discharges a taser. The taser is ineffective, and Edgar reacts angrily, suddenly charging in the direction of Flora, Sergeant McLaughlin, and Officer Torres. When Edgar charges, he momentarily leaves Officer Santiago's field of vision. Officer Torres fires, and Edgar immediately steps backwards, apparently uninjured and still holding the knife. Officer Santiago fires, and Edgar falls to the floor. All of the shooting takes place within a few seconds.

This narrative is strikingly similar to the facts of *City and County of San Francisco v. Sheehan*, 135 S. Ct. 1765 (2015). In *Sheehan*, two police officers were attempting to detain a mentally ill woman for temporary evaluation and treatment. *Id.* at 1770. Accompanied by a social

worker, the officers announced themselves and entered the woman's room. *Id.* The woman grabbed a kitchen knife and threatened to kill the officers. *Id.* The officers retreated and conferred, and then reentered the room with guns drawn. *Id.* at 1770–71. One of the officers attempted to subdue the woman with pepper spray, but she did not drop the knife. *Id.* at 1771. The other officer shot the woman twice. *Id.* She did not collapse, and the officer who had used the pepper spray fired multiple shots. *Id.* The Supreme Court concluded that the officers' use of deadly force was reasonable "even though it meant firing multiple rounds." *Id.* at 1775. Many courts in this circuit have found the use of deadly force to be reasonable under similar circumstances. *See, e.g., Cruz v. City of New Rochelle*, No. 13-CV-7432 (LMS), 2017 WL 1402122, at *8–9, *24–25 (S.D.N.Y. Apr. 3, 2017) (holding that it was reasonable for an officer to shoot a suspect who refused orders to drop a knife, was advancing towards officers, and was not subdued by officers' multiple attempts to use a taser); *Biggs v. City of New York*, No. 08-CV-8123 (PGG), 2010 WL 4628360, at *2, *4 (S.D.N.Y. Nov. 16, 2010) (holding that it was reasonable for an officer to shoot a suspect who refused orders to drop a knife and was "within lunging distance" of the officer); *Estate of Chipwata v. Rovinetti*, No. 02-CV-858 (DJS), 2004 WL 722166, at *6 (D. Conn. Mar. 31, 2004) (holding that it was reasonable for an officer to shoot a suspect who "was advancing on the officer, knife in hand, ignoring instructions to drop the weapon").

Plaintiffs correctly point out that each use of force must be evaluated separately and that the circumstances in which Officers Santiago and Torres fired were not necessarily the same. Pls.' Mem. at 13–14. However, the jury in this case could have reasonably concluded that the circumstances were not materially different, or at least that a reasonable officer would not have perceived them to be so. Even though Officer Santiago could not see Flora or Sergeant McLaughlin and Officer Torres from the stairway, he knew that Edgar was charging in their

9

direction. He was thus able to appreciate that Edgar's charge posed a significant threat of death or serious physical injury to Flora and his fellow officers. As Plaintiffs' counsel emphasized on multiple occasions during summation, all of the shots were fired within a very short period of time. *See* Trial Tr. at 1615:1–5, 1630:22–23. In light of this, and the fact that Officer Santiago testified that Edgar was still holding the knife and appeared to be uninjured when he came back into view, it was reasonable for the jury to conclude that the danger that justified Officer Torres's use of deadly force had not meaningfully abated by the time that Officer Santiago fired his weapon.[5]

The cases cited by Plaintiffs do not convince the Court otherwise. Without question, the use of deadly force can be unreasonable where the suspect is unarmed or has surrendered. *See Perez v. Suszczynski*, 809 F.3d 1213, 1217–18 (11th Cir. 2016) (denying summary judgment to an officer who was alleged to have shot a suspect who was "compliant and prostrate on his stomach" and whose gun had been thrown ten feet away by another officer); *Salvato v. Miley*, 790 F.3d 1286, 1293 (11th Cir. 2015) (denying summary judgment to an officer who was alleged to have shot a suspect who was "retreating, apparently unarmed, and outside of striking distance"); *Gilmere v. City of Atlanta*, 774 F.2d 1495, 1497, 1502 (11th Cir. 1985) (holding that it was unreasonable for an officer to shoot a suspect who was intoxicated and unarmed after the suspect resisted arrest by "attempting to flee and then flailing his arms about"); *cf. Edwards v. Shanley*, 666 F.3d 1289, 1296 (11th Cir. 2012) (denying summary judgment to an officer who was alleged to have subjected a suspect to a dog attack for five to seven minutes while the suspect lay "prone with his hands exposed and begging to surrender"). Even where the suspect is armed with a knife, the use of deadly force may not be appropriate if the suspect has not taken any threatening actions. *See*

---

[5] The fact that the other officers on the stairway did not fire their weapons does not compel a different conclusion. The reasonableness standard gives officers latitude "to make split-second judgments—in circumstances that are tense, uncertain, and rapidly evolving—about the amount of force that is necessary in a particular situation." *Graham*, 490 U.S. at 397.

10

*Zulock v. Shures*, 441 Fed. App'x 294, 302 (6th Cir. 2010) (denying summary judgment to an officer who was alleged to have shot a suspect with a knife "who had done nothing more than swear four or five times and was walking away"); *Reyes v. Bridgwater*, 362 Fed. App'x 403, 405, 407 (5th Cir. 2010) (denying summary judgment to an officer who was alleged to have shot a suspect with a knife who was standing "at a safe distance away from the officers" and "did not step forward towards the officers" or "raise the knife"); *Walker v. City of Orem*, 451 F.3d 1139, 1160 (10th Cir. 2006) (denying summary judgment to an officer who was alleged to have shot a suspect who was suicidal, was holding a knife to his own wrist, and "had made no threats and was not advancing on anyone"); *Zuchel v. City & Cty. of Denver*, 997 F.2d 730, 735–36 (10th Cir. 1993) (declining to set aside a jury finding of excessive force where there was evidence that an officer shot a suspect who was said to have a knife but "was not charging the officer and made no slicing or stabbing motions toward him"); *Reed v. City of Modesto*, 122 F. Supp. 3d 967, 981 (E.D. Cal. 2015) (declining to set aside a jury finding of excessive force where there was evidence that an officer shot a suspect with a knife who was suicidal, "did not advance" towards the officers, "and was not making movements that threatened physical injury to anyone"). The same is true where a once-dangerous suspect has already been incapacitated by officers' use of non-deadly force. *See, e.g., Herrera v. Las Vegas Metro. Police Dep't*, 298 F. Supp. 2d 1043, 1050 (D. Nev. 2004) (denying summary judgment to an officer who was alleged to have shot a suspect with a knife who was "standing with the knife pointed skyward, stunned [from officers' use of pepper spray], for nearly a full minute before" the officer shot him).

None of these principles, however, apply to the facts set forth above. As discussed, there was sufficient evidence for the jury to conclude that Edgar was armed, threatened to stab the officers, pointed the knife towards them, and was charging towards them and Flora at the time that

11

the shooting began. The shooting lasted just a few seconds, and according to Officer Santiago's testimony, Edgar was neither surrendering nor incapacitated when he fired. Thus, this is not a case "where there is such a complete absence of evidence supporting the verdict that the jury's findings could only have been the result of sheer surmise and conjecture, or there is such an overwhelming amount of evidence in favor of the movant[s] that reasonable and fair minded persons could not arrive at a verdict against [them]." *Vangas*, 823 F.3d at 180 (quotation marks and brackets omitted).

## CONCLUSION

For the foregoing reasons, Plaintiffs' motion is denied. The Clerk of Court is directed to terminate the motion pending at Docket Number 233 and enter judgment in favor of Defendants.

SO ORDERED.

Dated: September 27, 2017
New York, New York

Ronnie Abrams
United States District Judge